UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Slumberland Franchising, Inc. and<br>Slumberland, Inc., | ) | Court File No. 19-cv-2724 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| KRIL, LLC, an Illinois limited liability<br>company, WILLIAM J. VOGELGESANG,<br>a Minnesota resident, and KRISTINE J.<br>VOGELGESANG, a Minnesota resident, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

Plaintiffs Slumberland Franchising, Inc. ("SFI") and Slumberland, Inc. ("SI") (collectively "Plaintiffs"), for their complaint against Defendants Kril, LLC ("Kril"), William Vogelgesang, and Kristine Vogelgesang (collectively "Defendants"), state and allege as follows:

## INTRODUCTION

1.     This is an action for injunctive relief to enjoin Defendants' trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, et seq., and to enforce the terms of a Franchise Agreement between SFI and Kril. William Vogelgesang and Kristine Vogelgesang ("Guarantors") personally guaranteed Kril's obligations under the Franchise Agreement. SFI validly terminated the Agreement due to uncured defaults by Kril. The Agreement requires that, following termination, Kril must pay all amounts due and owing to SFI and its affiliates, immediately return all manuals, advertising material, and all other printed material to SFI, immediately inform suppliers in

writing of the termination, and cease all association with or use of the name Slumberland® and SI's other marks. Defendants have failed to perform these obligations, and have instead continued to operate a Slumberland® business despite the termination. Plaintiffs therefore seek an order enjoining Defendants' trademark infringement and failure to perform their post-termination obligations, and an award of damages.

## PARTIES

2.     Plaintiff SFI is a Minnesota corporation with a principal place of business at 3505 High Point Drive North, Building #2, Oakdale, MN 55128-3422. SFI is a franchisor of businesses that market beds, mattresses, bedroom furniture, sofas, reclining chairs, and other furniture.

3.     Plaintiff SI is a Minnesota corporation with a principal place of business at 3505 High Point Drive North, Building #2, Oakdale, MN 55128-3422. SI operates retail businesses that offer beds, mattresses, bedroom furniture, sofas, reclining chairs, and other furniture. SI is also a wholesale supplier of furniture and other merchandise to its corporate owned stores and SI's franchised stores.

4.     Defendant Kril is a limited liability company organized under the laws of Illinois with its principal office at 1711 West Morton Avenue, Jacksonville, Illinois 62650.

5.     Guarantors are both residents and citizens of Owatonna, Minnesota.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331 and 1338.

7.     This Court has personal jurisdiction over Kril because it voluntarily consented to personal jurisdiction in the state and federal courts of Minnesota pursuant to Article 28.7 of the parties' Franchise Agreement. This Court also has personal jurisdiction over Kril because it purposefully availed itself of the privilege of doing business in Minnesota, it has intentionally done business in Minnesota, enjoying the privileges and benefits of Minnesota's laws and regulations, and purposefully directed its actions towards Minnesota.

8.     This Court has personal jurisdiction over Guarantors because they are citizens and residents of the State of Minnesota.

9.     Venue is proper in this District pursuant to Article 28.7 of the Franchise Agreement and the Guaranty, which state that all litigation, lawsuits, hearings, proceedings, and other actions initiated by either party against the other party will be venued exclusively in St. Paul, Minnesota. Furthermore, venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims against Defendants arose in this district.

## FACTS

**A.     Slumberland® Trademarks and Franchise System**

10.     SI owns the Slumberland® name and related trademarks, trade names, service marks, slogans, logos, and commercial symbols (the "Slumberland® Marks" or "Marks"), as well as  the goodwill associated with them. A list of the Slumberland® Marks that have been registered with the United States Patent and Trademark Office is attached as Exhibit A.

11. Plaintiffs have developed a business concept for operating businesses of a distinctive character that market beds, mattresses, bedroom furniture, sofas, reclining chairs, and other upholstered furniture under the Slumberland® Marks (the "Business System").

12. Since their first use in 1967, the Slumberland® Marks have been used continuously by Plaintiffs and their affiliates.

13. The validity of the Slumberland® Marks, their registration, and Plaintiffs' exclusive right to use them in commerce are deemed incontestable under 15 U.S.C. §§ 1065 and 1115(b), as the Marks have been in continuous use in commerce for more than five (5) years and the required affidavits have been filed with the United States Patent and Trademark office.

14. Plaintiffs and their affiliates have expended a great amount of money, time, and effort in advertising and promoting the Slumberland® Marks throughout the United States, including the State of Illinois. By virtue of such efforts, the Slumberland® Marks have become associated in the minds of purchasers of furniture, and in the mind of the general public and trade, with Plaintiffs and Plaintiffs alone, and valuable goodwill has been built up in the Slumberland® Marks.

15. Plaintiffs have extensively publicized the Slumberland® Marks to the public as an organization of businesses operating under the Business System.

16. SI granted SFI the right and authority to license the Marks for use in connection with franchised businesses operated in conformity with the Business System.

17.     Slumberland® franchisees enjoy a license that allows them to use the Slumberland® Marks and Business System in connection with the operation of their Slumberland® franchised businesses.

**B.      The Franchise Agreement and Guaranty**

18.     Kril and SFI entered into a Franchise Agreement with an effective date of September 3, 2009 ("Franchise Agreement"), which granted Kril the right to operate a Slumberland® franchised business located at 1711 West Morton Avenue, Jacksonville, Illinois 62650 ("Franchised Location") for a period of 15 years. A true and correct copy of the Franchise Agreement is attached as Exhibit B.

19.     At or about the same time that Kril and SFI entered into the Franchise Agreement, Guarantors entered into a Personal Guaranty ("Guaranty") in which they guaranteed to SFI that they would be personally liable for each of Kril's payment and performance obligations under the Franchise Agreement. A true and correct copy of the Guaranty is attached as Exhibit C.

20.     Pursuant to Article 4.2 of the Franchise Agreement and the Guaranty, Defendants agreed they would not contest the validity or ownership of the Slumberland® Marks and Business System and the goodwill associated therewith.

21.     Pursuant to Articles 6.1, 6.2, and 6.3 of the Franchise Agreement and the Guaranty, Defendants agreed to pay SFI, on a monthly basis, Continuing Fees equal to the greater of: (1) three percent (3%) of Kril's monthly Gross Revenues (as the term is defined by the Franchise Agreement); or (2) $3,000 per month.

22.     Pursuant to Article 6.4 of the Franchise Agreement and the Guaranty, Defendants agreed to pay the monthly Continuing Fees to SFI on or before the 15th day of each month for the preceding month.

23.     Pursuant to Article 6.3 of the Franchise Agreement and the Guaranty, Defendants' failure to timely pay the monthly Continuing Fees to SFI is a material breach of the Franchise Agreement.

24.     Pursuant to Article 6.5 of the Franchise Agreement and the Guaranty, Defendants agreed that, if they failed to remit monthly Continuing Fees due to SFI on the 15th day of each month for the previous month, "then the unpaid monthly Continuing Fees due to [SFI] will bear interest at the maximum legal rate allowable," which would not exceed eighteen percent (18%) per annum simple interest.

25.     Pursuant to Article 6.6 of the Franchise Agreement and the Guaranty, Defendants agreed to pay SFI "for any and all costs incurred by [SFI] in the collection of unpaid and past due Continuing Fees including, but not limited to, the amount of actual attorneys' fees, deposition costs, expert witness fees, investigation costs, accounting fees, filing fees, and travel expenses."

26.     Pursuant to Article 8.12 and the Guaranty, Defendants agreed to timely pay all of Kril's uncontested and liquidated obligations and liabilities due and payable to SFI, and to suppliers, lessors, and creditors of Kril.

27.     Pursuant to Articles 8.8 and 8.9 of the Franchise Agreement and the Guaranty, Defendants agreed to conform to the image and identity of the Slumberland® business.

28.     Pursuant to Articles 23.1 and 23.3 of the Franchise Agreement and the Guaranty, Defendants were required to submit quarterly and annual Financial Statements (as the term is defined by the Franchise Agreement) within 30 days after the end of each quarter and within 75 days after the end of the fiscal year.

29.     Pursuant to Article 23.7 of the Franchise Agreement and the Guaranty, Defendants agreed to make all of the Business Records (as the term is defined in Article 33 of the Franchise Agreement) of the Franchise Location available for review and audit by SFI or its designee. If an audit shows that Kril's Gross Revenues were understated by more than two percent (2%) for any month, quarter, or year, then Defendants must pay all past due Continuing Fees and other amounts owed to SFI, and all costs and expenses (including salaries of SFI's employees, fees paid to SFI's outside accountants or consultants, travel expenses, and audit fees) incurred by SFI for the audit of Kril's Business Records.

30.     Pursuant to Article 22.3 of the Franchise Agreement and Guaranty, Defendants agreed to indemnify SFI against, and reimburse SFI for, all claims, liability, judgments, costs, and expenses, including attorneys' fees and travel expenses, incurred by SFI in any lawsuit or proceeding arising out of, as a result of, or in connection with the Franchised Location, including claims brought by customers against SFI for credits, down payments, and product returns.

31.     Pursuant to Articles 13.1, 13.2, and 13.4 of the Franchise Agreement, Defendants agreed that SFI had the right to terminate the Franchise Agreement upon notice to Kril subject to a right to cure, if:

> … (b) [Kril] violates any material provision, term or condition of this Agreement including, but not limited to, failure to timely pay any Continuing Fees or any other monetary fees or obligations due to [SFI], or an Affiliate of [SFI] pursuant to this Agreement or any other agreement; (c) [Kril] fails to conform to the Business System or the standards of uniformity and quality for the products and services promulgated by [SFI] in connection with the Business System; (d) [Kril] fails to timely pay any uncontested obligations or liabilities due and owing to [SFI], suppliers, banks, purveyors, other creditors or any federal, state or municipal government (including, if applicable, federal and state taxes) …

Under Article 13.2 of the Franchise Agreement, Kril had 15 days after receipt of a written notice of default to cure its failure to pay fees or other amounts due and owing, and 30 days after receipt of a written notice of default to cure all other breaches.

32.     Pursuant to Article 13.7 of the Franchise Agreement and the Guaranty, if the Franchise Agreement is terminated pursuant to Articles 13.1 and 13.2 of the Agreement, SFI is entitled to seek recovery from Defendants all damages that SFI has sustained and will sustain in the future as a result of Defendants' breach of the Franchise Agreement and the Guaranty, taking into consideration the Continuing Fees that would have been payable by Defendants for the remaining term of the Franchise Agreement.

33.     Pursuant to Article 15.1 of the Franchise Agreement and the Guaranty, Defendants agreed that:

> In the event this Agreement is terminated for any reason or this Agreement expires without the Franchisee reacquiring the Franchise for the Franchised Location, then the Franchisee will: (a) within five days after termination, pay all amounts due and owing to the Franchisor under this Agreement; (b) immediately return to the Franchisor by first class prepaid United States mail all manuals, advertising materials and all other printed materials pertaining to the Franchisee's Slumberland® Business; (c) immediately inform its suppliers in writing of the termination of the Franchisee's right to operate a franchised Slumberland® Business; and (d) comply with all other applicable provisions of this Agreement. Upon expiration or termination of this Agreement for any reason, the Franchisee's right to use or be associated

8

with the name "Slumberland®," the other Marks, the Slumberland® Website, the e-mail address for its Slumberland® Business, and the Business System will terminate immediately.

34.     Pursuant to Article 15.2 of the Franchise Agreement and the Guaranty, Defendants agreed that, if the Franchise Agreement is terminated for any reason, then Defendants would, at their expense:

> alter, modify and change, both the exterior and interior appearance of the Franchised Location so that it will be easily distinguished from the standard appearance of a Slumberland® Business. At a minimum, such changes and modifications to the Franchised Location will include: (a) re-painting and, where applicable, recovering both the exterior and interior of the Franchised Location, including removing any distinctive colors and designs from the walls; (b) removing all fixtures and other decor items and replacing them with other decor items not of the general type and appearance customarily used in Slumberland® Businesses; (c) removing all exterior and interior Slumberland® signs; and (d) immediately discontinuing use of approved wall decor items and window decals, and refraining from using any items which are confusingly similar.

35.     Pursuant to Article 15.3 of the Franchise Agreement and the Guaranty, Defendants acknowledged that SFI "has the absolute right and interest in all of the telephone numbers and directory listings associated with the Marks." Defendants also authorized the telephone company and all listing agencies to transfer all of Kril's telephone numbers and directory listings to SFI or SFI's assigning upon termination of the Franchise Agreement. Kril was required to provide to SFI a written assignment of the telephone numbers listed under the Marks.

36.     Kril also entered into a Telephone Listing Agreement dated September 3, 2009 ("Telephone Agreement"). Under the terms of the Telephone Agreement, Kril agreed that the telephone numbers and directory listings for the Franchised Location are the sole property of SFI and that, upon termination of the Franchise Agreement for any

reason, Kril would immediately cease all use of such telephone numbers and telephone directory listings. A true and correct copy of the Telephone Agreement is attached as Exhibit D.

37.     Defendants also agreed to fully comply with the post-termination non-competition provision in Article 16.3 of the Franchise Agreement and the Guaranty. Specifically, Defendants agreed that they would not:

> for a period of one year after the termination or expiration of this Agreement, on their own account or as an employee, agent, consultant, partner, officer, director or Owner of any other person, Entity, partnership or corporation, own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or Entity engaged in the business of marketing beds, mattresses, bedroom furniture, sofas, reclining chairs and other upholstered furniture, or any other related business that is in any way competitive with or similar to the Slumberland® Business which is located: … within 10 miles of the Franchised Location or an existing Business operated by [SFI] or any of [SFI]'s franchisees if the Franchised Location or the Business is located in a Minor Market; or (c) within any exclusive area granted by [SFI] or any Affiliate [SFI] pursuant to any franchise, development, license or other territorial agreement. [Kril], [Kril]'s Owners and the Personal Guarantors expressly agree that the time and geographical limitations set forth in this provision are reasonable and necessary to protect [SFI] and [SFI]'s franchisees if this Agreement expires or is terminated by either party for any reason.

38.     Pursuant to Article 16.4 of the Franchise Agreement and the Guaranty, Defendants agreed that SFI is entitled to injunctive relief to enforce the provision in Article 16.3. Specifically, Defendants agreed that:

> the provisions of this ARTICLE are necessary to protect the legitimate business interests of [SFI] and [SFI]'s franchisees including, without limitation, prevention of the unauthorized dissemination of confidential information to competitors of [SFI] and [SFI]'s franchisees, protection of [SFI]'s trade secrets and the integrity of [SFI]'s franchise system, and prevention of the duplication of the Business System by unauthorized third parties. [Defendants] also agree that damages alone cannot adequately compensate [SFI] if there is a violation of this ARTICLE by [Defendants],

and that injunctive relief against [Defendants] is essential for the protection of [SFI] and [SFI]'s franchisees. [Defendants] agree therefore, that if [SFI] alleges that [Defendants] have breached or violated this ARTICLE, then [SFI] will have the right to petition a court of competent jurisdiction for injunctive relief against [Defendants], in addition to all other remedies that may be available to [SFI]. [SFI] will not be required to post a bond or other security for any such injunctive proceeding.

39.     Pursuant to Article 20.4 of the Franchise Agreement and the Guaranty, SFI has the right to seek injunctive relief against the Defendants without posting a bond or other security to require Defendants, at their expense, to remove the Marks from the Franchise Location upon termination of the Franchise Agreement.

40.     Pursuant to Article 28.1 of the Franchise Agreement and the Guaranty, SFI has the right to temporary and permanent injunctions and orders of specific performance, without posting a bond or other security, to enforce provisions of the Agreement relating to "(a) the Marks and the Business System; (b) the obligations of [Defendants] upon termination of the Franchise Agreement … (d) confidentiality of the Operations Manual and other materials; (e) [Defendants'] covenants not to compete; and (f) any act or omission by the [Kril] or [Kril]'s employees that, (1) constitutes a violation of any applicable law, ordinance or regulation, (2) is dishonest or misleading to the customers of [Defendants'] Slumberland® Business or other Slumberland® Businesses … or (4) may impair the goodwill associated with the Marks and the Business System." Defendants agreed to indemnify SFI for all costs it incurs in obtaining injunctive relief, including, without limitation, attorneys' fees, expert witness fees, costs of investigation, court costs, litigation expenses, accounting fees, travel expenses and other costs.

**B.      Defendants Obtained Inventory and Other Tangible Property for which They Have Not Paid**

41.      Prior to the termination of the Franchise Agreement, SI provided furniture and other merchandise, inventory, and other tangible property to Defendants for Defendants to sell in their Franchised Location.

42.      In exchange for the merchandise, inventory, and other tangible property SI provided to Defendants, Defendants agreed to pay SI the total amount of $203,935.93.

43.      In addition, Defendants have outstanding liabilities, in the estimated amount of $157,614.87, to customers of their Franchised Location for credits, down payments, and product returns.

44.      Despite their agreement and obligation to do so, Defendants have failed to pay for the merchandise, inventory, and other tangible property provided by SI.

45.      SI has made multiple demands upon Defendants for the amounts due. Defendants have failed and refused to satisfy SI's demands.

46.      SI has filed a UCC Financing Statement regarding its security interest in all of Kril's inventory and other tangible personal property Kril purchased from SI.

**C.      SFI Terminated the Franchise Agreement due to Defendants' Defaults**

47.      In addition to failing to pay for merchandise, inventory, and other tangible property provided by SI, Defendants failed to pay Continuing Fees to SFI under the Franchise Agreement, in the estimated amount of $7,521.97.

48.      SFI required Defendants to remodel the Franchised Location pursuant to Articles 8.8 and 8.9 of the Franchise Agreement and the Guaranty, but Defendants failed to remodel the Franchised Location.

49.     Defendants failed to provide SFI with the Financial Statements for the first and second quarters of 2019, as required under Article 23 of the Franchise Agreement.

50.     By letter dated June 26, 2019 ("Notice of Default"), SFI notified Defendants that they were in default of the Franchise Agreement for the following reasons:

a.  Defendants failed to pay Plaintiffs amounts due and owing;

b.  Defendants failed to comply with remodel and other requirements; and

c.  Defendants failed to provide SFI with required Financial Statements.

A true and correct copy of the Notice of Default is attached as Exhibit E.

51.     As part of the Notice of Default, SFI gave Defendants 15 days to cure their failure to pay fees and other amounts due to SFI and its affiliates.

52.     Defendants failed to cure their default by paying amounts due and owing to SFI within 15 days of receipt of the Notice of Default.

53.     As part of the Notice of Default, SFI gave Defendants 30 days to cure their other defaults by (a) beginning, and working diligently to complete by October 15, 2019, all requirements necessary to bring the Franchise Location in compliance with the common image and identity of the Slumberland® business; and (b) provide SFI with all missing Financial Statements.

54.     Defendants failed to cure their other defaults by (a) beginning, and working diligently to complete by October 15, 2019, all requirements necessary to bring the Franchise Location in compliance with the common image and identity of the

Slumberland® business; and (b) providing SFI with all missing Financial Statements within 30 days of receipt of the Notice of Default.

55.     On August 8, 2019, SFI sent a letter to Defendants ("Notice of Termination") notifying them that SFI was terminating the Franchise Agreement. The Notice of Termination demanded payment of all amounts due and owing within five days of Defendants' receipt of the Notice of Termination, and demanded Defendants' compliance with their other post-termination obligations. A true and correct copy of the Notice of Termination is attached as Exhibit F.

**D.     Defendants Failed to Comply with their Post-Termination Obligations, are Continuing to Operate their Franchised Location, and are Infringing upon the Slumberland® Marks.**

56.     Following the termination of the Franchise Agreements, SFI discovered that Defendants have failed to fulfill the following post-termination obligations:

a.  Pay all amounts due and owing to SFI and SI and their affiliates;

b.  Return to SFI first class prepaid United States mail all manuals, advertising materials, and all other printed materials pertaining to the Franchised Location;

c.  Inform Defendants' suppliers in writing of the termination of Defendants' right to operate a franchised Slumberland® business;

d.  Cease using or being associated with the name "Slumberland®," the other Marks, the Slumberland® Website, the e-mail address for its Slumberland® business, and the Business System;

e.  Alter, modify, and change, at Defendants' expense, both the exterior and interior appearance of the Franchised Location so that it will be easily distinguished from the standard appearance of a Slumberland® business, as specified in Section 15.2 of the Franchise Agreement;

f.  Comply with the covenant against competition described in Section 16.3 of the Franchise Agreement;

g.  Acknowledge, and facilitate, as necessary, SFI's absolute right to notify the telephone company and all listing agencies of the termination or expiration of your right to use all telephone numbers and all classified and other directory listings under the "Slumberland®" name and to authorize the telephone company and all listing agencies to transfer to Slumberland or its assignee all telephone numbers and directory listings of your Slumberland® Business, as specified in Section 15.3 of the Franchise Agreement; and

h.  Pay SFI's out-of-pocket expenses related to the collection of all amounts due, including attorneys' fees, as described in Section 6.6 of the Franchise Agreement.

57.    SFI has learned that Defendants continue to operate the Franchised Location, and continue to use and associate themselves with the Slumberland® Marks, including by using the telephone number (217-243-9600) associated with their Franchised Location.

58.    Defendants continue to sell furniture and other products and services using forms and business cards bearing the Slumberland® Marks

59.    Plaintiffs were recently contacted by customers who purchased merchandise from Defendants, after the Franchise Agreement had been terminated, believing that Defendants were still operating a Slumberland® business. These customers did not receive the merchandise they had purchased from Defendants.

60.    Defendants have no legal right to operate their competing furniture business or use the Marks in the operation of their competing furniture business.

61.    Plaintiffs suffer irreparable harm to the Marks and Business System and customer goodwill each day that Defendants continue to operate a competing business, wrongfully suggest an association between their business and the Slumberland®

Business System. A dissatisfied customer of Defendants' competing business will incorrectly attribute that dissatisfaction to Plaintiffs and to Slumberland® franchisees. This is potentially damaging not only to Plaintiffs, but also to all of its franchisees who rely on the reputation of the Slumberland® Marks in the operation of their businesses. In addition, the harm suffered to Plaintiffs' goodwill will likely make it difficult for SFI to re-franchise the area as it will have lost some of its established customer base and goodwill. Plaintiffs require immediate and permanent injunctive relief to prevent Defendants from continuing to trade off Plaintiffs' name and trademark.

62.     Because Defendants are not a current franchisee, SFI has no control over them, their competing business, or their use of the Marks. Nor does SFI have any control over the goods and services being offered by Defendants. This has the potential of causing significant harm to the reputation and goodwill associated with SFI's Business System and the Marks.

63.     To allow a competitor's business to continue to confuse the public as to its affiliation with the Slumberland® Business System places the reputation, goodwill, and integrity of the Slumberland® Marks in jeopardy.

64.     Defendants' continuing, deliberate, wanton, and fraudulent use of the Marks and continued operation of a competing business is likely to cause confusion, mistake, and deception among the relevant consumer public as to the source of its services, and subjects Plaintiffs' rights in the Marks to irreparable injury. Plaintiffs have no adequate remedy at law, and the only meaningful relief is an injunction enjoining Defendants from unlawfully and wrongfully infringing upon the Marks.

16

## COUNT I
## BREACH OF FRANCHISE AGREEMENT AND GUARANTY
## FAILURE TO PAY FEES

65.    Plaintiffs incorporate by reference all preceding paragraphs herein.

66.    Kril has a contractual obligation under the Franchise Agreement to pay certain Continuing Fees and other amounts as set forth in the Franchise Agreement, in the estimated amount of $7,521.97.

67.    Pursuant to the Guaranty, Guarantors agreed to be personally liable to SFI for amounts owed by Kril under the Franchise Agreement.

68.    SFI has performed all conditions, covenants, and promises to be performed by it pursuant to the Franchise Agreement and the Guaranty.

69.    Defendants are in breach of the Franchise Agreement and the Guaranty as a result of their failure to pay all fees and other amounts due and owing under the Franchise Agreement.

70.    As a direct result of Defendants' breaches, SFI has been damaged in an amount to be proven at trial, but in no event less than the estimated amount of $7,521.97 plus costs, disbursements, interest, and attorneys' fees.

## COUNT II
## BREACH OF FRANCHISE AGREEMENT AND GUARANTY
## FAILURE TO PROVIDE MONTHLY REPORTS
## ACCOUNTING FOR UNPAID FEES

71.    Plaintiffs incorporate by reference all preceding paragraphs herein.

72.    Under Article 23 of the Franchise Agreement and the Guaranty, Defendants agreed to submit quarterly and annual Financial Statements (as the term is defined in the Franchise Agreement) to SFI.

73.    Defendants breached the Franchise Agreement and the Guaranty by failing to provide SFI with Financial Statements required under Article 23.

74.    Pursuant to Article 23.7 of the Franchise Agreement and the Guaranty, Defendants agreed to make all of Kril's Business Records (as the term is defined in Article 33 of the Franchise Agreement) for the Franchise Location available for review and audit by SFI or its designee.

75.    SFI is entitled to full access to all of Kril's Business Records (including but not limited to all records, ledgers, work papers, written records, memos, books, accounts, bank statements, tax returns, sales tax returns, daily cash register tapes and other financial information relating in any respect to the Franchise Location) so that a full and complete audit can be conducted to determine the full scope of Defendants' breaches and violations of the Franchise Agreements and federal trademark law and damages related thereto.

76.    An accurate determination of the full scope of the damages related to Defendants' breaches of the non-compete provisions of the Franchise Agreements and violation of federal trademark law cannot be confirmed without an accounting of the sales transactions, profit and loss statements, and other financial materials, statements, and other Business Records of Defendants.

77.    Plaintiffs are entitled to an accounting of Defendants' earnings and revenues dating from the date of the Franchise Agreement to the present for the purposes of determining Plaintiffs' damages.

## COUNT III
## ACCOUNT STATED

78.    Plaintiffs incorporate by reference all preceding paragraphs herein.

79.    SI established an account on behalf of Defendants and provided Defendants with merchandise, inventory, and other tangible property pursuant to that account.

80.    Defendants agreed to pay all amounts due and owing under the account.

81.    Despite due demand, Defendants have failed and refused to pay all of the amounts due and owing under the account.

82.    As a result of Defendants' failure to pay all amounts due and owing under the account, SI has been damaged in the amount of $203,935.93, plus costs, disbursements, interest, and attorneys' fees.

## COUNT IV
## UNJUST ENRICHMENT

83.    Plaintiffs incorporate by reference all preceding paragraphs herein.

84.    Defendants were obligated to pay Plaintiffs Continuing Fees, advertising expenditures made on Kril's behalf, and for merchandise, inventory, and other tangible property provided by Plaintiffs.

85.    Defendants have failed to pay for the goods and services they have received from Plaintiffs, and from which they have benefitted.

86.    Defendants have been unjustly enriched by its failure to pay Plaintiffs in full for the goods and services Defendants received.

87.    As a result, Plaintiffs have been damaged in the amount of $203,935.93, plus interest, costs, and attorneys' fees.

## COUNT V
## BREACH OF FRANCHISE AGREEMENT AND GUARANTY
## FAILURE TO PAY FUTURE LOST FEES

88.    Plaintiffs incorporate by reference all preceding paragraphs herein.

89.     The Franchise Agreement and the Guaranty required Defendants to pay SFI Continuing Fees and other fees set forth in the Franchise Agreement, for the entire term of the Franchise Agreement.

90.     Defendants caused the premature termination of the Franchise Agreement by, among other things, (a) failing to pay all amounts due and owing under the Franchise Agreement, (b) failing to comply with remodel and other requirements as required by the Franchise Agreement, and (c) failing to provide SFI with certain Financial Statements, as required by the Franchise Agreement.

91.     By virtue of Defendants' premature termination of the Franchise Agreement, SFI sustained a loss of future revenue over the remainder of the term of the Franchise Agreement.

92.     SFI has been damaged by Defendants' breach of their obligations to operate the Slumberland® Franchise Location for the remaining term of the Franchise Agreement.

93.     As a direct result of their breaches, Defendants are liable to SFI for damages in an amount to be proven at trial, plus costs, disbursements, interest, and attorneys' fees.

## COUNT VI
## BREACH OF FRANCHISE AGREEMENT AND GUARANTY
## FAILURE TO COMPLY WITH POST-TERMINATION OBLIGATIONS

94.     Plaintiffs incorporate by reference all preceding paragraphs herein.

95.     Defendants failed to comply with the post-termination obligations set forth in Articles 15.1, 15.2, and 15.3 of the Franchise Agreement and the Guaranty.

96.    Defendants' failure to comply with the post-termination obligations set forth in the Franchise Agreement is causing irreparable harm and damage to Plaintiffs, is causing confusion in the marketplace, and will impair the goodwill associated with the Slumberland® Marks and Business System.

97.    Plaintiffs have no adequate remedy at law to protect their substantial business and property rights. The damages from Defendants' failure to comply with the post-termination obligations are considerable and continuing, and thus not capable of ascertainment at this time.

98.    Plaintiffs are entitled to immediate and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreements.

99.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

## COUNT VII
## BREACH OF FRANCHISE AGREEMENT AND GUARANTY
## FAILURE TO COMPLY WITH NON-COMPETE

100.   Plaintiffs incorporate by reference all preceding paragraphs herein.

101.   Defendants have failed to comply with the post-termination non-compete provisions in Article 16.3 of the Franchise Agreement.

102.   Defendants' failure to comply with the post-termination non-compete obligations set forth in the Franchise Agreement is causing irreparable harm and damage

to Plaintiffs, is causing confusion in the marketplace, and will impair the goodwill associated with the Slumberland® Marks and Business System.

103.    Plaintiffs have no adequate remedy at law to protect their substantial business and property rights. The damages from Defendants' failure to comply with the post-termination non-compete provision in Article 16.3 is considerable and continuing, and thus not capable of ascertainment at this time.

104.    Plaintiffs are entitled to immediate and permanent injunctive relief enforcing the non-compete provisions in Article 16.3.

105.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

## COUNT VIII
## FEDERAL TRADEMARK INFRINGEMENT

106.    Plaintiffs incorporate by reference all preceding paragraphs herein.

107.    SI has registered the Slumberland® Marks with the United States Patent and Trademark Office.

108.    Since registering the Slumberland® Marks, Plaintiffs have extensively advertised the Marks in connection with its products and services of the Business System.

109.    Defendants have no right to use the Slumberland® Marks.

110.    Defendants continue to use the Slumberland® Marks in the operation of a competing business in violation of the Lanham Act.

111.   Defendants' unauthorized use and display of the Slumberland® Marks constitutes willful and intentional infringement of the trademark in violation of Section 43(g) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

112.   Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

113.   Defendants' use in commerce of the Slumberland® Marks without the consent of Plaintiffs is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiffs.

114.   Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

115.   Plaintiffs have no adequate remedy at law to protect their substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

116.   Unless the Court restrains and enjoins Defendants from such activity, Defendants will persist in the infringing use of the Slumberland® Marks.

117.   Plaintiffs are entitled to a preliminary and permanent injunction against Defendants' continued use of the Slumberland® Marks, to an accounting of Defendants' earnings and profits, and to recover treble damages, in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

## COUNT IX
## FALSE DESIGNATION OF ORIGIN/FEDERAL UNFAIR COMPETITION

118.   Plaintiffs incorporate by reference all preceding paragraphs herein.

119.   Defendants have infringed Plaintiffs' rights by using the Slumberland®
Marks without authority. Defendants are using the Slumberland® Marks in their
advertising and operation of their business.

120.   Due to Defendants' infringement and conduct, customers are likely to be
confused and induced into visiting Defendants' competing business with the belief that
the goods and services are delivered by an authorized franchisee of SFI. Customers have
been or are likely to be confused as to the sponsorship of the goods and services sold by
Defendants, while they continue to hold themselves out to be a franchisee, or former
franchisee, of the Slumberland® Business System.

121.   Defendants' actions constitute unfair competition in violation of 15 U.S.C.
§ 1125(a) and common law.

122.   Defendants' acts were done knowingly and intentionally to cause confusion,
or to cause mistake, or to deceive.

123.   Plaintiffs have suffered and are continuing to suffer irreparable injury, and
have incurred and are continuing to incur monetary damage in an amount that has yet to
be determined.

124.   Plaintiffs have no adequate remedy at law to protect their substantial
business and property rights. The damages from Defendants' activities are considerable
and continuing and thus not capable of ascertainment at this time.

125.    Plaintiffs are entitled to preliminary and permanent injunctive relief preventing Defendants' unfair competition.

126.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damages in an amount that has yet to be determined, plus costs, disbursements, interest, and attorneys' fees.

## COUNT X
## CONVERSION

127.    Plaintiffs incorporate by reference all preceding paragraphs herein.

128.    By using the Slumberland® Marks without permission or license, and by receipt of goods from Plaintiffs without paying for them, Defendants have converted Plaintiffs' property to Defendants' own use.

129.    Defendants' conduct has damaged Plaintiffs in an amount to be determined at trial and, unless restrained, will continue to seriously harm Plaintiffs in a manner that cannot be rectified with a monetary award.

130.    Plaintiffs are entitled to a temporary restraining order and to a preliminary and permanent injunction against Defendants' continued use of the Slumberland® Marks, to an accounting of Defendants' earnings and profits and to recover damages and attorneys' fees.

## COUNT XI
## ATTORNEYS' FEES

131.    Plaintiffs incorporate by reference all preceding paragraphs herein.

132.   Pursuant to Article 6.6 of the Franchise Agreement and the Guaranty, Defendants agreed to pay SFI for any and all costs incurred by SFI in the collection of unpaid and past due Continuing Fees including, but not limited to, the amount of actual attorneys' fees, deposition costs, expert witness fees, investigation costs, accounting fees, filing fees, and travel expenses.

133.   Pursuant to Article 28.1 of the Franchise Agreement and the Guaranty, Defendants agreed to pay SFI for costs it incurs in obtaining injunctive relief, including, without limitation, attorneys' fees, expert witness fees, costs of investigation, court costs, litigation expenses, accounting fees, travel expenses, and other costs.

134.   Plaintiffs commenced this action to recover unpaid and past due Continuing Fees, and to obtain injunctive relief and specific performance to enforce the provisions of the Franchise Agreement. Plaintiffs are entitled to recover their attorneys' fees and costs in connection with this action, in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.   For an award against Defendants, jointly and severally, for past due Continuing Fees and related fees, plus accrued interest, in an amount to be proven at trial, but in no event less than $7,521.97;

B.   For an order directing Defendants to comply with all of the reporting requirements of the Franchise Agreement;

C.   For an order directing Defendants to make Kril's Business Records available to SFI for review and audit;

D.     For an award against Defendants, jointly and severally, for lost prospective fees arising from Defendants' premature termination of the Franchise Agreement;

E.     For an award against Defendants, jointly and severally, for the cost of merchandise, inventory, and other tangible property provided by SI to Defendants, in an amount to be proven at trial, but in no event less than $203,935.93;

F.     For an order for a preliminary and permanent injunction directing that Defendants and their officers, directors, shareholders, members and/or partners, beneficial owners, investors, employees, consultants, representatives, attorneys and agents, and all others in active concert or participation with them, shall:

1.     Immediately cease using, employing, or being associated with any of the Slumberland® Marks, telephone numbers associated with those Marks, or any other name, designation, or mark which is deceptively or confusingly similar to, or likely to cause confusion with, any of the Slumberland® Marks;

2.     Immediately take down, remove, or cause to have taken down or removed all signs, vehicle decals, and advertising materials bearing or using the Slumberland® Marks, including but not limited to internet websites and directory listings;

3.     Cease using or being associated with the name "Slumberland®," the other Marks, the Slumberland® Website, the e-mail address for its Slumberland® Business, and the Business System

4.     Alter, modify, and change, at Defendants' expense, both the exterior and interior appearance of the Franchised Location so that it will be easily distinguished from the standard appearance of a Slumberland® Business;

5.     Return to SFI by first class prepaid United States mail all manuals, advertising materials, and all other printed materials pertaining to the Franchised Location;

6.     Inform Defendants' suppliers in writing of the termination of Defendants' right to operate a franchised Slumberland® Business;

7. For a period of one year after termination, on their own account or as an employee, agent, consultant, partner, officer, director, or owner of any other person, entity, partnership, or corporation, cease and desist from having any interest or assist any person or entity engaged in the business of marketing beds, mattresses, bedroom furniture, sofas, reclining chairs, and other upholstered furniture, or any other related business that is in any way competitive with or similar to the Slumberland® Business, within 10 miles of the Franchised Location, an existing business operated by SFI or any of SFI's franchisees, or within any exclusive area granted by SFI or any Affiliate SFI pursuant to any franchise, development, license, or other territorial agreement;

8. Notify the telephone company and all listing agencies of the termination or expiration of Defendants' right to use all telephone numbers and all classified and other directory listings under the "Slumberland®" name; and

9. Authorize the telephone company and all listing agencies to transfer to SFI or its assignee all telephone numbers and directory listings of the Franchised Location.

G.   For an order, pursuant to 15 U.S.C. § 1116, requiring Defendants to file with the Court and serve on Plaintiffs within fifteen (15) days after service on them of an Order of Injunction, a written report, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

H.   For an award against Defendants, jointly and severally, for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their operation of a competing furniture business in violation of the non-compete provisions in the Franchise Agreement;

I.   For an award against Defendants, jointly and severally, for the damages Plaintiffs have sustained and the profits Defendants have derived as a result of their trademark infringement and unfair competition, assessing such damages in a separate

accounting procedure, and then trebling those damages in accordance with Section 35 of the Lanham Act, 15 U.S.C. § 1117;

J.      For an award against Defendants, jointly and severally, for Plaintiffs' reasonable costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the Franchise Agreement;

K.      For an award against Defendants, jointly and severally, for Plaintiffs' costs, disbursements, and attorneys' fees incurred in this action, as allowed by the Lanham Act;

L.      For an award against Defendants, jointly and severally, for prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117; and

M.      For such other and further relief as the Court deems just and equitable.


Dated:  October 17, 2019                    GRAY, PLANT, MOOTY,
                                                          MOOTY & BENNETT, P.A.

                                            By _____s/Michael R. Gray_____
                                                      Michael R. Gray (#0175602)
                                                      Raymond J. Konz (#0391236)
                                            500 IDS Center
                                            80 South Eighth Street
                                            Minneapolis, MN  55402
                                            Telephone:  (612) 632-3000
                                            Fax:  (612) 632-4444
                                            Michael.Gray@gpmlaw.com
                                            Raymond.Konz@gpmlaw.com

                                            ATTORNEYS FOR PLAINTIFFS

GP:4845-1110-9801